**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| IN RE: | CASE No. 18-20306 (JJT) |
| | CASE No. 18-20308 (JJT) |
| ORTEGA'S MEXICAN RESTAURANT, LLC and PABLO ORTEGA, DEBTORS. | (Jointly Administered) |
| | CHAPTER 11 |
| ORTEGA'S MEXICAN RESTAURANT, LLC, PLAINTIFF | ADV. PRO. No. 18-02036 (JJT) |
| V. | RE: ECF Nos. 6, 13, 17, and 18 |
| HAPPY ROCK MERCHANT SOLUTIONS, LLC, DEFENDANT. | |

**APPEARANCES**

Kenneth R. Davison, Esq.                                       Attorney for the Plaintiff
Action Advocacy PC
One Crouch Street
Groton, CT 06340

Joel M. Jolles, Esq.                                           Attorney for the Defendant
Law Office of Joel M. Jolles
P.O. Box 185418
Hamden, CT 06518

**RULING AND MEMORANDUM OF DECISION
DETERMINING WHETHER CONTESTED TRANSACTION
<u>WAS A LOAN OR PURCHASE OF ACCOUNTS RECEIVABLE</u>**

I.     INTRODUCTION

The debtor, Ortega's Mexican Restaurant, LLC ("Debtor"),[1] instituted this adversary proceeding against Happy Rock Merchant Solutions, LLC ("Happy Rock"), seeking to avoid and recover transfers and receive damages emanating from alleged fraud, usury, and CUTPA[2] violations. Happy Rock, by way of its answer, filed a counterclaim, seeking a declaratory judgment to determine the validity, extent, and ownership of certain of the Debtor's accounts receivable. At the heart of the matter is a merchant sales agreement dated July 11, 2017 ("Agreement"), which the Debtor claims was a loan and Happy Rock claims was a purchase of accounts receivable. As a threshold matter, the Court, at the parties' behest, will determine whether the contested transaction was a loan or a purchase of accounts receivable and issued a case management order directing the parties to submit briefs and stipulated facts and exhibits. Having reviewed the parties' submissions and the law, the Court agrees with Happy Rock that the Agreement was a purchase of accounts receivable.

II.     JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). Counts 1 and 2 of the amended complaint (ECF No. 6) are core proceedings under 28 U.S.C. § 157(b)(2)(F). Counts 3–6 are non-core proceedings but are "related to" matters under 28 U.S.C. § 157(a). Happy Rock's counterclaim is a core proceeding

---

[1] The Debtor's case is being jointly administered with that of its principal, Pablo Ortega ("Mr. Ortega"). For purposes of this decision, "Debtor" shall refer only to the company. Mr. Ortega shall be referred to by name.
[2] Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*

under 28 U.S.C. §§ 157(b)(2)(A) and (O). *See U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Assoc., Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 636–39 (2d Cir. 1999).[3]

III.   FACTS AND PROCEDURAL HISTORY

The Court recites the following undisputed facts and procedural history:

1. The Debtor is a limited liability company, organized and established under the laws of the State of Connecticut. Jt. Stip. ¶ 1.

2. Mr. Ortega is the sole member and manager of the Debtor. Jt. Stip. ¶ 2.

3. Happy Rock is a limited liability company, organized and established under the laws of the State of New Jersey. Jt. Stip. ¶ 3.

4. Mr. Ortega, acting on behalf of the Debtor, entered into the Agreement[4] on or about July 11, 2017, which states in part that Happy Rock would pay the Debtor $20,000.00 for the purchase of $27,600.00 of the Debtor's future receivables. Jt. Stip. ¶ 4.

5. A portion of the $20,000.00 purchase price ($11,006.00) was to be used to satisfy the balance of a purchased amount remaining due to Happy Rock under a prior, similar agreement dated April 10, 2017, in which the Debtor sold a total of $22,080.00 of its future receivables for a payment of $16,000.00. Jt. Stip. ¶ 5.

6. Under the Agreement, the Debtor was to pay 19% of its daily receipts until the purchased amount was paid in full. Jt. Stip. ¶ 6.

---

[3] At a minimum, the parties have agreed that Counts 1 and 2 of the amended complaint are core proceedings. Because the legal determination of the nature of the Agreement is crucial to deciding those counts, the Court has statutory jurisdiction to make such a determination. To the extent that any core counts may be "*Stern* claims," *see generally Stern v. Marshall*, 564 U.S. 462 (2011), the parties, through their pleadings and conduct, have consented to this Court's jurisdiction and ultimate entering of final judgment pertaining to the determination of the nature of the Agreement.

[4] The parties submitted executed and clean copies of the Agreement as Exhibits A and B to the parties' amended joint stipulation of facts (ECF No. 20). The Court assumes the parties' familiarity with Exhibits A–D.

7. The Agreement does not provide for any set daily, monthly, annual, or other specific amounts to be paid other than the agreed upon 19% of the Debtor's daily receipts. Jt. Stip. ¶ 7.

8. The Agreement does not contain a finite term of repayment. Jt. Stip. ¶ 8.

9. The payment of the purchased amount by the Debtor was contingent upon its future sales proceeds unless there was an event of default, as set forth under the terms of the Agreement, in which case Happy Rock could seek recourse against Mr. Ortega individually as guarantor. Jt. Stip. ¶ 9.

10. The Agreement does not provide Happy Rock with any recourse unless the Debtor violates any of its representations, warranties, and required conduct set forth in the Agreement, in which case Happy Rock could seek recourse against Mr. Ortega individually as guarantor. Jt. Stip. ¶ 10.

11. Mr. Ortega personally guaranteed the Debtor's performance under the Agreement and was required to sign a confession of judgment. Jt. Stip. ¶ 11.

12. Pursuant to the Agreement, the Debtor entered into a separate agreement with Paysmith Account Processing ("Paysmith") and authorized its credit card processor to deposit its credit card proceeds into an account maintained by Paysmith, who, in turn, would pay Happy Rock 19% of the Debtor's receivables. Jt. Stip. ¶¶ 12, 14.

13. The Paysmith account was a "special purpose" account for the Debtor's use in facilitating the financial arrangements between the Debtor and Happy Rock. Jt. Stip. ¶ 13.

14. In connection with the Paysmith agreement, the Debtor had the opportunity to be provided with a passcode allowing it access to view the Paysmith account and obtain

balance and transaction information for the account at any time and, as the Debtor agreed, to review the account each month and promptly notify Paysmith of any errors. Jt. Stip. ¶¶ 15, 16.

15. The Paysmith agreement provided for "Error Resolution Procedures" in the event of errors or questions about the transaction with the Paysmith account. Jt. Stip. ¶ 17.

16. The Agreement provides that it shall be governed by and construed in accordance with the laws of the state of New York. Jt. Stip. ¶ 18.

17. Happy Rock filed a UCC-1 financing statement on April 24, 2017 covering the following collateral: operating accounts, accounts receivable, credit card and charge card receivables, cash on hand and on deposit in banks, cash equivalents, contracts, real property leases, notes, bills, acceptances, choses in action, chattel paper, instruments, documents, and other forms of obligations at any time owing to the Debtor arising out of goods sold or leased or for services rendered by the Debtor, the proceeds thereof, and all of the Debtor's rights with respect to any goods represented thereby, now owned or hereafter acquired wherever located. Jt. Stip. ¶ 19.

18. ln the event of default, the Agreement permits Happy Rock to file financing statements against any of the Debtor's inventory and equipment owned by the Debtor or Mr. Ortega. Jt. Stip. ¶ 20.

19. The application that was reviewed by Happy Rock in its approval of the Debtor for the previous merchant sales agreement dated April 10, 2017 was forwarded to Happy Rock by a broker and disclosed an existing relationship between the Debtor and Can Capital for the sale of future accounts receivable, under which the Debtor owed Can Capital $6,000.00 and was paying $600.00 per week in automated clearing house debits. Jt. Stip. ¶ 21; Ex. C.

20. Happy Rock used the application and bank statements provided by the Debtor in its approval process for the merchant sales agreement dated April 10, 2017. Jt. Stip. ¶ 22.

21. Happy Rock did not require a new application for the Agreement, although it did review bank statements for April, May, and June of 2017 and a bank transaction report for the period of May 1, 2017 through July 19, 2017. Jt. Stip. ¶ 23; Ex. D.

22. On March 5, 2018, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code. Mr. Ortega filed for protection under Chapter 11 on the same day. The cases were ordered to be jointly administered on April 6, 2018 (Docket No. 18-20306, ECF No. 28).

23. To date, Happy Rock has not filed a proof of claim in either case.

24. The Debtor initiated this adversary proceeding on July 26, 2018 (ECF No. 1). The operative complaint was filed August 22, 2018 (ECF No. 6).

25. Happy Rock answered the amended complaint, asserting a counterclaim for a declaratory judgment, on October 2, 2018 (ECF No. 13).

26. The Court held a pretrial conference on October 15, 2018, at which the parties agreed to have the Court first determine, in this threshold decision, whether the subject transaction was a loan or a purchase of accounts receivable (ECF No. 16). Accordingly, the Court ordered the parties to file stipulated facts and exhibits and briefs laying out their positions (ECF No. 17), which the parties did (ECF Nos. 20–28).

27. The Court heard arguments on January 8, 2019 and took the matter under advisement (ECF No. 33).

IV. CONCLUSIONS OF LAW

The Debtor argues that the Agreement was for a loan because the principal was repayable absolutely (ECF No. 21). Specifically, the Debtor argues that the Debtor, upon execution of the

Agreement, was immediately in default because the Debtor had disclosed that it had received a cash advance from another company, but the Agreement required it to represent that it did not. The Debtor also contends that Happy Rock did not perform sufficient due diligence to determine if the Debtor was solvent but should have known that the Debtor was insolvent, and that Happy Rock never provided the Debtor with information concerning balances and reconciliation. Happy Rock counters that the Agreement was for the purchase of accounts receivable because the transaction between the parties has none of the markers of a loan that New York courts look for in making such determination (ECF No. 22). The Court agrees with Happy Rock.

"In New York, there is a presumption that a transaction is not usurious. . . . In determining whether a transaction is a loan or not, the Court must examine whether or not defendant is absolutely entitled to repayment under all circumstances. For a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard." *K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 56 Misc. 3d 807, 816, 57 N.Y.S.3d 625 (N.Y. Sup. Ct. 2017) (citations, emphasis. and internal quotation marks omitted). To determine if repayment is absolute or contingent, courts weigh three factors: (1) whether there is a reconciliation provision in the agreement, (2) whether the agreement has a finite term, and (3) whether there is any recourse should the merchant declare bankruptcy. *Id.* at 816–18.

Looking at the first factor, the presence of a reconciliation provision, the Court notes that the parties stipulated to the fact that the Debtor had the ability to review the Paysmith account online to view balance information and inform Paysmith of errors needing correction. "The reconciliation provisions allow the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof). If a merchant is doing poorly, the

merchant will pay less, and will receive a refund of anything taken by the company exceeding the specified percentage (which often can also be adjusted downward). If the merchant is doing well, it will pay more than the daily amount to reach the specified percentage." *Id.* at 817. The Debtor had both the ability to check the amounts being taken from the Paysmith account and even had the affirmative obligation to correct any errors. The Court finds that this factor weighs in favor of the transaction not being a loan.

As for the second factor, the presence of an indefinite term, the Court notes that the Agreement has no set period for repayment. The Debtor, however, believes that payment became definite and absolute upon execution because the Debtor was simultaneously using another merchant capital company and otherwise in material default at inception. The Court is not persuaded.

The Debtor's argument is premised on a reading of the Agreement that has no basis in New York contract law. To presume an automatic default upon execution, the Court must construe the contract in a way that renders most of the document a nullity. "[I]n construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless[.]" *37 E. 50th St. Corp. v. Rest. Grp. Mgmt. Servs., L.L.C.*, 156 A.D.3d 569, 569, 68 N.Y.S.3d 424 (App. Div. 1st Dep't 2017) (citation and internal quotation marks omitted); *see also Keller-Goldman v. Goldman*, 149 A.D.3d 422, 426, 52 N.Y.S.3d 17 (App. Div. 1st Dep't 2017), ("a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties" [citation and internal quotation marks omitted]) *aff'd*, 31 N.Y.3d 1123, 106 N.E.3d 725 (2018). The Court is not persuaded that the parties intended the absurd result of immediate default.

"Moreover, courts are alert to inequalities of bargaining power and the inclusion by adhesion of onerous clauses . . . . In such circumstances, a court will be even more ready to examine the cases to make sure that an overreaching to exploit a technical breach will not work a substantial forfeiture[.]" *W. F. M. Rest., Inc. v. Austern*, 35 N.Y.2d 610, 614, 324 N.E.2d 149, 364 N.Y.S.2d 500 (1974) (citations omitted). Much of the Debtor's argument requires the Court to construe a particular clause in a manner that would normally be impermissible. The Agreement provides in part that:

> In the event of [the Debtor's] [d]efault under any provision of this Agreement, [Happy Rock] may immediately declare the remaining portion of the [p]urchased [a]mount to be immediately due and payable, together with all out of pocket expenses accruing due to the breach of this Agreement; upon the occurrence of a [d]efault, such amounts shall immediately and automatically become due and payable without any further action by [the Debtor]. Upon such declaration or such automatic acceleration, the balance then outstanding of the [p]urchased [a]mount shall become immediately due and payable[.]

This passage is inherently contradictory because it provides for a discretionary declaration of default and the automatic declaration of one.[5] Because such a contradiction creates an ambiguity, the Court must interpret the provision against the drafter. *See Lai Ling Cheng v. Modansky Leasing Co., Inc.*, 73 N.Y.2d 454, 460, 539 N.E.2d 570, 541 N.Y.S.2d 742 (1989). Although the Debtor now would prefer that the pertinent provision be construed so as to create automatic default, under normal circumstances, a court would not find automatic default because to do so would favor Happy Rock. The Court will not do so because it is now advantageous for the Debtor. The Court's construction is thus consistent with N.Y. U.C.C. § 1-304, which provides that "[e]very contract or duty within [the Uniform Commercial Code] imposes an obligation of good faith in its performance and enforcement." The second factor, therefore, weighs in favor of finding that the transaction was not for a loan.

---

[5] The Debtor overlooks that such defaults, in any event, are waivable.

Similar logic applies to the Court's analysis of the final factor, the presence of a recourse provision for a party's insolvency. Because the Court must construe the default provision cited above to mean that Happy Rock has to declare a default for insolvency before it can seek recourse, such a provision does not make the amount paid repayable absolutely merely because the Debtor is in bankruptcy. Even if the Court were to find this factor in the Debtor's favor, in weighing all three factors, it is clear that they weigh in favor of the conclusion that the Agreement was not for a loan.

V.   CONCLUSION

For the foregoing reasons, the Court holds that the Agreement was for the purchase of accounts receivable, not for a loan.[6] The parties are ordered to meet and confer prior to a status conference to be held on February 26, 2019 at 11:00 a.m.

IT IS SO ORDERED at Hartford, Connecticut this 1st day of February 2019.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[6] This threshold determination does not dispose of any of the counts in the complaint or counterclaim and is, therefore, not a final judgment, order, or decree subject to appeal under 28 U.S.C. § 158. *See Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 982 F.2d 769, 774–76 (2d Cir. 1992).